UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 17-cv-60801-BLOOM/Valle

MARYANN FIORENTINO, individually,
and on behalf of all others similarly situated,

      Plaintiff,

v.

FINANCIAL RECOVERY
SERVICES, INC.

      Defendant.

_____/

## MOTION FOR CLASS CERTIFICATION AND MEMORANDUM OF LAW

      Plaintiff, Maryann Fiorentino (hereinafter "Plaintiff"), on behalf of herself and all others similarly situated, by and through the undersigned counsel and pursuant to Federal Rule of Civil Procedure 23, hereby moves this Court for an Order certifying the Class, to secure redress for Defendant, Financial Recovery Services, Inc.'s (hereinafter, "FRS" or "Defendant") violations of the Fair Debt Collection Practices Act (hereinafter "FDCPA"), 15 U.S.C. § 1692 *et seq.* and in support thereof states as follows:

### I.    BACKGROUND AND PREMISE

      This case arises from FRS's unlawful use of false information to induce consumers into making payments on stale or "zombie debts," thereby reviving the statute of limitations.

      Specifically, FRS sends collection letters offering payment-plans, which include objectively false information to convince consumers that accepting a payment plan *will not* revive the collector's ability to take legal action to collect the balance or effect the consumers' right not to be sued by the collector (hereinafter, "Deceptive Letter"). A copy of the Deceptive Letter is attached as **Exhibit "A."** FRS's disclosure and representations are uncontrovertibly false.

#### A.   RECOGNIZING THE DEBT THROUGH PAYMENT OR AGREEING TO PAY ONE OF FRS'S PAYMENT PLANS REVIVES THE STATUTE OF LIMITATIONS ON OTHERWISE TIME BARRED DEBT

Contrary to FRS' disclosure, and contrary to FRS's corporate representative's sworn deposition testimony, a creditor's right to sue is revived if a consumer recognizes the time-barred debt and make even a modest payment pursuant to a payment plan. *Baez v. LTD Fin. Services, L.P.*, 615CV1043ORL40TBS, 2017 WL 1291070, at *2 (M.D. Fla. Apr. 7, 2017)  (recognizing the well-established principle under Florida law that, when a debt has become time-barred due to the running of the statute of limitations, the debt may be revived and the debtor may be subjected to liability anew if the debtor subsequently acknowledges or promises to pay the time-barred debt.) *See, e.g., Baez v. LTD Fin. Services, L.P.*, 615CV1043ORL40TBS, 2017 WL 1291070, at *2 (M.D. Fla. Apr. 7, 2017) Fla. Stat. § 95.04; *In re Stewart*, 215 B.R. 633, 636–37 (Bankr. M.D. Fla. 1997); *In re Kessler Mfg. Corp.*, 109 B.R. 516, 519 (Bankr. S.D. Fla. 1989); *Coker v. Phillips*, 103 So. 612, 614–15 (Fla. 1925); *Wassil v. Gilmour*, 465 So. 2d 566, 568 & n.5 (Fla. Dist. Ct. App. 1985); *Kitchens v. Kitchens*, 142 So. 2d 343, 345 (Fla. 2nd DCA 1962) (recognizing that even an oral promise to pay an otherwise time barred debt can renew the statute of limitations or give rise to another cause of action); *See, e.g., Calvary Portfolio Serv. v. Stout* (Minn. Dist Ct. Wash. Cnty. Feb. 11, 2011); *Asset Acceptance, L.L.C. v. Hanson,* 2009 WL 840047 (Cal. Ct. App. Apr. 1, 2009) (unpublished).

"By making partial payments on the debt, the debtor recognizes and signifies the intent to honor the obligation" *Branch Banking & Tr. Co. v. Crystal Ctr., LLC*, 8:15-CV-1462-T-30EAJ, 2015 WL 4756961, at *1 (M.D. Fla. Aug. 11, 2015); *see also, generally, Cadle Co. v. McCartha*, 920 So. 2d 144 (Fla. 5th DCA 2006). See, e.g., *Jenkins v. Gen. Collection Co.*, 538 F. Supp. 2d 1165, 1173 (D. Neb. 2008) ("Voluntary payment of any part of principal or interest tolls the statute of limitations and a new right of action accrues after each payment."); *United States v. Glens Falls Ins. Co.*, 546 F. Supp. 643, 645 (N.D.N.Y. 1982) ("[A]t common law, part payment of a debt starts the statute of limitations running anew in that part payment is tantamount to a voluntary acknowledgment of the existence of the debt, from which the law implies a new promise to pay the balance."); *Young v. Sorenson*, 121 Cal. Rptr. 236, 237 (Ct. App

### B. FRS, AND OTHER DEBT COLLECTORS, REGULARLY ATTEMPT TO MISLEAD CONSUMERS INTO MAKING SMALL PAYMENTS ON TIME BARRED DEBT, IN ORDER TO REVIVE THE STATUTE OF LIMITATIONS

Courts, the Consumer Financial Protection Bureau ("CFPB"), and the Federal Trade Commission alike, have recognized debt collectors' attempts to mislead consumers into making

small payments on time-barred debt, in order to revive the statute of limitations. *See*, e.g., *Calvary Portfolio Serv. v. Stout* (Minn. Dist Ct. Wash. Cnty. Feb. 11, 2011); *Asset Acceptance, L.L.C. v. Hanson,* 2009 WL 840047 (Cal. Ct. App. Apr. 1, 2009) (unpublished).

In its 2010 Litigation Report, the FTC addressed debt collectors and debt buyers' disclosures, which are required to prevent deception in collecting on time-barred debts. The report stated that "*most consumers do not know or understand their legal __rights__ with respect to the collection of time-barred debt.*" FEDERAL TRADE COMMISSION, REPAIRING A BROKEN SYSTEM: PROTECTING CONSUMERS IN DEBT COLLECTION LITIGATION AND ARBITRATION (2010) [*hereinafter* FTC LITIGATION REPORT 2010], available at http://www.ftc.gov/os/2010/07/debtcollectionreport.pdf. This report also found that during the collection process, consumers may unknowingly waive statute of limitations defenses they could otherwise raise. *Id.*

### C. FRS, INTENTIONALLY ATTEMPTED TO MISLEAD PLAINTIFF AND THE CLASS AND ACKNOWLEDGES THE DECEPTIVE NATURE OF ITS COLLECTION LETTER.

Here, immediately after explaining the consumer's right not to be sued, and immediately before Defendant's list of payment plans, Defendant includes a patently false statement of law. Specifically, in an attempt to induce consumers like Plaintiff to make a payment, Defendant states that "the settlement options below **do not** affect your rights as described above" ("Deceptive Sentence"). In other words, FRS attempts to convince consumers that selecting one of the payment plans in the Deceptive Letter *will not* affect the consumers' rights with regard to the time-barred debt. *See, e.g.,* **Chart "A"**; *see also,* **Exhibit "A."** The Deceptive Sentence is blatantly false.

| CHART "A" |
|---|
| You have the Right not to be sued. |
| You have the Right to Certain Information. |
| **"The Settlement Options Below Do Not Affect Your Rights Described Above":** |
| Settlement Option 1: lump sum. |
| Settlement Option 2: payment plan |
| Settlement Option 3: payment plan |

Most tellingly, however, is the fact that FRS' expressly recognizes that a consumer reading FRS's Deceptive Letter would have no idea that the offered payment plan could revive the statute of limitations. [Deposition of FRS' 30(b)(6) Corporate Representative, Brian Bowers (hereinafter "FRS Depo") at page 98; line 3 – page 99; line 13]. A copy of the FRS Depo. is attached hereto as **Exhibit "B."** Instead, FRS "assumes" that consumers would contact a lawyer upon receipt of the Deceptive Letter—defeating the very purpose of the least

sophisticated consumer standard described below. [FRS Depo. at page 67; line 21-23 and page 70; lines 7-14].

### D. DEFENDANT VIOLATED THE FAIR DEBT COLLECTION PRACTICES ACT

In determining whether FRS's Deceptive Letter violated the FDCPA, the Court must determine whether the "least sophisticated consumer" would be misled or deceived by the Settlement Offer Letter. *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1193 (11th Cir. 2010) ("We employ the "least-sophisticated consumer" standard to evaluate whether a debt collector's communication violates [] the FDCPA.").

> The law was not "made for the protection of experts, but for the public— that vast multitude which includes the ignorant, the unthinking, and the credulous," and the "fact that a false statement may be obviously false to those who are trained and experienced does not change its character, nor take away its power to deceive others less experienced."

*Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1173 (11th Cir. 1985) (citations omitted), *quoting Charles of the Ritz Distribs. Corp. v. Federal Trade Comm'n*, 143 F.2d 676, 679 (2d Cir. 1944).[1]

Failure to properly or honestly inform the consumer as to their rights constitutes a violation of the FDCPA. *See Palmer v. Dynamic Recovery Sol. 's, LLC*, No. 6: 15-cv-59-0rl-40KRS, 2016 WL 2348704, *4 (M.D. Fla. May 4, 2016) *Daugherty v. Convergent Outsourcing, Inc., et. al.*, 836 F.3d 507, 513 (5th Cir. 2016) (holding that "a collection letter seeking payment on a time-barred debt (without disclosing its unenforceability) but offering a 'settlement' and inviting partial payment (without disclosing the possible pitfalls) could constitute a violation of the FDCPA"); *McMahon v. LVNV Funding, LLC*, 744 F.3d 1010, 1020 (7th Cir.2014)(holding that "if the debt collector uses language in its dunning letter that would mislead an unsophisticated consumer into believing that the debt is legally enforceable ... the collector has

---

[1] *See also Pollard v. Law Office of Mandy L. Spaulding*, 766 F.3d 98, 103 n.4 (1st Cir. 2014) (noting that a majority of circuit courts apply the "least sophisticated consumer" standard but that "there appears to be little difference between this formulation and the 'unsophisticated consumer' formulation"); *Clomon v. Jackson*, 988 F.2d 1314, 1319 (2d Cir. 1993) ("In recent years, as courts have incorporated the jurisprudence of the FTC Act into their interpretations of the FDCPA, the language of Exposition Press has gradually evolved into what we now know as the least-sophisticated-consumer standard."); *Federal Trade Comm'n v. Raladan Co.*, 316 U.S. 149, 151-152, 62 S. Ct. 966, 968-969, 86 L. Ed. 1336 (1942); *Exposition Press, Inc. v. Federal Trade Comm'n*, 295 F.2d 869 (2d Cir. 1961).

violated the FDCPA."); *Pantoja v. Portfolio Recovery Assocs., LLC,* 78 F. Supp. 3d 743 (N.D. Ill. 2015) affirmed in *Pantoja v. Portfolio Recovery Associates, LLC,* Case No. 15-1567, (7th Cir. 2017).

Once again, here, immediately after explaining the consumer's rights and immediately before Defendant's list of "settlement options," Defendant includes a patently false statement of law: that selecting one of the settlement options *will not* affect the consumers' rights with regard to the time-barred debt.

As is evident from FRS's assumption that upon receipt of the Deceptive Letter, consumers would seek advice of legal counsel, it is principally undisputed that the least sophisticated consumer would be misled by the Deceptive Letter and FRS therefore violated the FDCPA. [FRS Depo. at page 67; line 21-23 and page 70; lines 7-14].

If a class were certified in this case, the Court would be required to determine whether FRS did, in fact, violate the FDCPA simply by reviewing the letter and ruling on the issue of whether the "least sophisticated consumer" would be misled or deceived by letter. *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1193 (11th Cir. 2010).

## II.     PROPOSED CLASS DEFINITION

The **Class** should be defined as:

> All persons in the state of Florida who FRS sent a collection letter containing an out of statute statement substantially similar to the Letter attached to the Complaint as Exhibit A.

## III.     MEMORANDUM OF LAW

### A. LEGAL STANDARD FOR CLASS CERTIFICATION

"The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979)). The Court has considerable discretion when deciding whether to certify a class action. *Tabor v. Hilti, Inc.,* 703 F.3d 1206, 1227 (10th Cir. 2013) (because class certification involves "intensely practical considerations," decision rests within discretion of trial court). But when exercising this discretion, district courts must conduct a "rigorous analysis" and decide whether the putative class satisfies the requirements of Rule 23. *Comcast*, 133 S. Ct. at 1432; *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).

The elements of the class certification standard are (1) numerosity, (2) commonality, (3) typicality, and (4) adequate representation, plus one of the requirements of Rule 23(b)(1) through (3). *See* Fed. R. Civ. P. 23. Plaintiff seeks certification under Rule 23(b)(3), which also requires plaintiff to demonstrate that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *Leszczynski v. Allianz Ins.*, 176 F.R.D. 659, 668 (S.D. Fla. 1997); *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 117 (1997); *Williams v. Mohawk Indus.*, Inc., 568 F.3d 1350, 1359-60 (11th Cir. 2009).

## B. FDCPA CLASS ACTIONS ARE EXPRESSLY RECOGNIZED BY CONGRESS AND ARE ROUTINELY CERTIFIED; THOSE INVOLVING FORM DEBT COLLECTION LETTERS ARE THE MOST READILY CERTIFIABLE

Congress expressly recognized the importance of class actions to protect consumers under the FDCPA by providing special damage provisions and criteria in 15 U.S.C. §§ 1692k(a) and (b) for FDCPA class action cases. Pursuant to Congress's directive, district courts in the Eleventh Circuit regularly certify FDCPA class actions. *See, e.g., Roundtree v. Bush Ross, P.A.*, 304 F.R.D. 644 (M.D. Fla. 2015) *reconsideration denied sub nom. Roundtree v. Ross*, No. 8:14-CV-357-T-27AEP, 2015 WL 1931103 (M.D. Fla. Apr. 28, 2015); *Agan v. Katzman & Korr, P.A.*, 222 F.R.D. 692 (S.D. Fla. 2002); *Fuller v. Becker & Poliakoff, P.A.*, 197 F.R.D. 697, 700 (M.D. Fla. 2000); *Swanson v. Mid Am, Inc.*, 186 F.R.D. 665, 668 (M.D. Fla.1999); *Stewart v. Slaughter*, 165 F.R.D. 696, 700 (M.D. Ga.1996).

Perhaps the most readily certifiable class actions are those involving form debt collection letters[2] because "the Court need not determine whether the named plaintiff or other

---

[2] *West v. Costen*, 558 F.Supp. 564, 572-573 (W.D.Va. 1983) (class certified regarding alleged failure to provide required "validation" notices); *Cheqnet Systems, Inc. v. Montgomery*, 911S.W.2d 956 (Ark. 1995); *Labbate-D'Alauro v. GC Services FRS, Partnership*, 1996 WL 563376 (E.D.N.Y. 1996); *Stewart v. Slaughter*, 165 F.R.D. 696 (M.D.Ga. 1996); *Villareal v. Snow*, 1996 WL 28254 (N.D.ILL.1996); *Holloway v, Pekay*, 1995 WL 16925 (N.D.ILL. 1995); *Can v. Trans Union Corp.*, 1995 WL 20865 (E.D.Pa. 1995) (FDCPA class certified regarding defendant Trans Union's transmission of misleading collection notices to consumers); *Colbert v. Trans Union Corp.*, 1995 WL 20821 (E.D.Pa. 1995) (FDCPA class certified regarding defendant Trans Union's transmission of misleading collection notices to consumers); *Gammon v. GC Services*, 162 F.R.D. 313 (N.D.ILL. 1995); *Zanni v. Lippold*,

putative plaintiffs read or were confused by the notice, as the standard is whether the "least sophisticated consumer" *would* have been misled." *Swanson v. Mid Am, Inc.,* 186 F.R.D. at 668 (M.D. Fla. 1999) (citing *Jeter v. Credit Bureau, Inc.,* 760 F.2d 1168, 1175 (11th Cir.1985)(emphasis added); *Fuller v. Becker & Poliakoff, P.A.,* 197 F.R.D. 697, 698-99 (M.D. Fla. 2000)(FDCPA claims certified where Defendants sent collection letters to class members: (1) failing to state the amount of the debt; (2) contradicting and overshadowing the validation notice; (3) falsely representing a remedy available to the creditor, and (4) using false representation or deceptive means in an attempt to collect the debt.); *Rivera v. Amalgamated Debt Collection Servs., Inc.,* 462 F. Supp. 2d 1223 (S.D. Fla. 2006)(class certification granted in class action against debt collector under FDCPA and other state statutes relating to two standard form letters that debt collector sent to consumer plaintiff.)

Indeed, "[i]n cases seeking relief for conduct involving form collection letters alleged to violate the FDCPA ..., certification of a class action is not unusual."; *Gaalswijk-Knetzke v. Receivables Mgmt. Servs. Corp.,* No. 8:08- CV-493-T-26TGW, 2008 WL 3850657, at *2 (M.D. Fla. Aug. 14, 2008).

### C. THE PROPOSED CLASS SATISFIES THE CRITERIA IN F.R.C.P. 23(A)

All requirements of Rule 23(a) of the Federal Rules of Civil Procedure are satisfied by the proposed Classes.

#### 1. NUMEROSITY: THE CLASS IS SO NUMEROUS THAT JOINDER OF ALL MEMBERS IS IMPRACTICAL

##### a. *Relevant Law*

The Class is so numerous that joinder of all members is impractical. Fed. R. Civ. P. 23(a)(1). The focus of this inquiry "is not whether the number of proposed class members is 'too few' to satisfy the Rule, but 'whether joinder of proposed class members is impractical.'" *Sharf v. Financial Asset Resolution, LLC,* 295 F.R.D. 664, 669 (S.D. Fla. January 16, 2014)

---

119 F.R.D. 32, 35 (C.D.Ill. 1988); *Vaughn v. CSC Credit Services, Inc.,* 1994 WL 449247 (N.D.Ill, 1994), *adopted,* 1995 WL 51402 (N.D.Ill,1995) (FDCPA class certified regarding alleged failure to provide sufficient "validation"notices); *Avila v. Van Ru,* 1995 WL 41425 (N.D.ILL.1995); *Brewer v. Friedman,* 152 F.R.D. 142 (N.D.ILL. 1993) (FDCPA class certified regarding transmission of misleading collection demands to consumers), earlier opinion, 833 F.Supp. 697 (N.D.Ill.1993); *Beasley v. Blatt,* 1994WL 362185 (N.D.ILL. 1994); *Duran v. Bureau of Yuma, Inc.,* 93 F.R.D. 607 (D.Ariz. 1982).

(quoting *Armstead v. Pingree*, 629 F.Supp. 273, 279 (M.D. Fla. 1986)). The Rule does not establish a precise numerical threshold, but parties seeking class certification "must make reasonable estimates that the class to be certified will satisfy the numerosity requirement." *Williams v. Wells Fargo Bank, Nat'l Ass'n*, 280 F.R.D. 665, 672 (S.D. Fla. 2012). The court may "make common sense assumptions in order to find support for numerosity." *Evans v. United States Pipe & Foundry*, 696 F.2d 925, 930 (11th Cir. 1983). "[T]he court may assume sufficient numerousness where reasonable to do so in absence of a contrary showing by defendant, since discovery is not essential in most cases in order to reach a class determination...Where the exact size of the class is unknown, but it is general knowledge or common sense that it is large, the court will take judicial notice of this fact and will assume joinder is impracticable." 2 *Newberg on Class Actions* (3d ed. 1992), §7.22A.

### b. *Analysis*

In this case, it is not anticipated that Defendant will contest numerosity as it is undisputed that the proposed class exceeds two-thousand-nine hundred (2,900) people, and therefore easily satisfies the numerosity requirement. [FRS Depo. at Page 19; Lines 15-18].

Indeed, FRS sent out the Deceptive Letter to 2,984 Florida residents. [*Id.*] The Deceptive Letter is a form document that contains variable fields for the recipient's name, address and original creditor, but which uniformly contains the Deceptive Sentence. [*Id.*; see also FRS Depo. at Page 27; Line 11-13].

Furthermore, FRS has a record of every Deceptive Letter that it sent and can identify through a search query the name and address of every person in the State of Florida to whom the letter was sent. [FRS Depo. at Page 81; Line 25 – Page 84: Line 7]. Accordingly, the Class is not only sufficiently numerous, but also, as detailed more fully below, is sufficiently ascertainable.

### 2. COMMONALITY: QUESTIONS OF LAW AND FACT ARE COMMON TO THE CLASS
### a. *Relevant Law*

Rule 23(a)(2) of the Federal Rules of Civil Procedure requires "questions of law or fact common to the class." "This part of the rule does not require that all the questions of law and fact raised by the dispute be common or that the common questions of law or fact predominate over individual issues." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1268 (11th Cir. 2009) (internal quotations and citation omitted). Rather, commonality requires that there

be at least one issue whose resolution will affect all or a significant number of the putative class members. *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1355 (11th Cir. 2009). For purposes of Rule 23(a)(2), even a single common question of law *or* fact will do. *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). Commonality is usually shown when "a plaintiff alleges that "[d]efendants have engaged in a standardized course of conduct that affects all class members." *In re Checking Account Overdraft Litig.*, 281 F.R.D. 667, 674 (S.D. Fla. 2012) (collecting cases)

### b. *Analysis*

Here, there are unquestionably questions of fact or law common to the class, which predominate over any questions affecting only individual members. Fed. R. Civ. P. 23(a)(2), Fed. R. Civ. P. 23(a)(3). These common questions include, but are not limited to:

> Whether FRS violated 15 U.S.C. §§ 1692e by sending Collection Letters offering payment plan settlement options, which informed the consumer that the settlement options below (listed in the letter) did not affect the consumers right not to be sued on a time barred debt.

Here, it is undisputed that Defendant engaged in a common course of conduct by sending out the same Deceptive Letter in the same fashion to nearly three thousand (3000) people. The common questions about the illegality of the Deceptive Letter will lead to answers common to the Class, advancing the litigation for all Class members "in one stroke." See *Dukes*, 131 S.Ct. at 2551. Commonality in FDCPA claims involving form letters is easily established. To establish commonality, Plaintiff needs to merely allege that all class members received substantially similar letters. *Swanson v. Mid Am, Inc.*, 186 F.R.D. 665, 668 (M.D.Fla. 1999) ("To establish commonality, it is sufficient that plaintiff allege that all class members received the same collection letter.") statute of limitations on the debt.

Plaintiff and the Class were victims of this common course of conduct, therefore commonality is established.

### 3. TYPICALITY: THE CLAIMS OR DEFENSE OF THE REPRESENTATIVE PARTIES BE TYPICAL OF THE CLAIMS OR DEFENSES OF THE CLASS

#### a. *Relevant Law*

Rule 23(a)(3) of the Federal Rules of Civil Procedure requires that "the claims or defense of the representative parties [be] typical of the claims or defenses of the class." "Typicality ... does not require identical claims or defenses." *Kornberg v. Carnival Cruise*

*Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984). Rather, typicality "is established if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory." *Id.* Moreover, "[d]ifferences in the amount of damages between the class representative and other class members does not affect typicality." *Id.*

### b. Analysis

Because the statute of limitations period had expired, Plaintiff had the right not to be sued for the debt listed in the Deceptive Letter—unless of course she made a payment acknowledging the debt. *See* **Exhibit "A."** However, FRS's Deceptive Letters mislead consumers into believing that entering into a payment plan and making payments as offered in the Deceptive Letter, **would not** affect Plaintiff's right not to be sued. Again, this is false.

Here, each putative Class member was sent the same Deceptive Letter with the same Deceptive Sentence—it was a form letter sent to two thousand nine hundred and eighty-four (2,984) consumers. [FRS Depo at page 19; lines 15-18 and page 27; lines 11-13]; *Swanson v. Mid Am, Inc.*, 186 F.R.D. 665, 668 (M.D.Fla. 1999). The claims of the class stem from the same deceptive pattern and practice, and are based on the same legal theory.

Plaintiff's claims are typical to the claims of the class, therefore typicality is satisfied.

### 4. ADEQUACY OF REPRESENTATION: THE REPRESENTATIVE PARTIES WILL FAIRLY AND ADEQUATELY PROTECT THE INTERESTS OF THE CLASS

### a. Relevant Law

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." "[T]his requirement applies to both the named plaintiff and counsel," and "the requirement's purposes is to protect the legal rights of absent class members." *London v. Wal-Mart Stores*, 340 F.3d 1246, 1253 (11th Cir. 2003) (internal quotations omitted). Additionally, this requirement is meant "to uncover conflicts of interest between named parties and the class they seek to represent." *Id.*

### b. Analysis

Here, both prongs of the "adequacy" test are met. First, Plaintiff has retained counsel experienced in class action litigation to prosecute her claims and those of the Class. Declarations from Plaintiff's counsel are attached hereto as composite **Exhibit "C."** Plaintiff's counsel has been certified to represent classes in state and federal courts

throughout the country, including the Southern District of Florida. Second, there is no conflict between Plaintiff and the Class; Plaintiff and the Class share the same common interest in establishing that FRS's debt collection letter violates the FDCPA. [*See* Deposition of Plaintiff, Maryann Fiorentino at page 19; line 5-8 and page 75; line 5-18] (speaking generally about her duty and commitment to act in the best interest of the Class); *see also* Plaintiff's Declaration in Support of Class Certification. A copy of Plaintiff Maryann Fiorentino's Deposition Transcript is attached hereto as **Exhibit "D"** and Plaintiff's Declaration in Support of Class Certification is attached hereto as **Exhibit "E."**

Plaintiff and her counsel will adequately protect the interests of the Class, and adequacy of representation is therefore satisfied.

**5.** INHERENT REQUIREMENT OF ASCERTAINABILITY: THERE IS A FEASIBLE METHOD TO IDENTIFY CLASS MEMBERS

a. *Relevant Law*

An implicit requirement of Rule 23 embraced in this Circuit is that the proposed class be "adequately defined and clearly ascertainable." *Bussey v. Macon Cnty. Greyhound Park, Inc.*, 562 F. App'x 782, 787 (11th Cir.2014) (quoting *Little v. T–Mobile USA, Inc.*, 691 F.3d 1302, 1304 (11th Cir.2012)). This requirement is referred to as "ascertainability." "If the district court determines that this requirement has been met, it is then obliged to examine the [explicit] prerequisites set forth in Federal Rule of Civil Procedure 23(a)." *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 984 (11th Cir. 2016).

The "court need not know the identity of each class member before certification; ascertainability requires only that the court be able to identify class members at some stage of the proceeding." *Karhu v. Vital Pharm., Inc.*, 621 F. App'x 945, 952 (11th Cir. 2015) (concurring opinion) (quoting Newberg on Class Actions § 3.3 (5th ed.)). In order to establish **ascertainability**, the plaintiff must propose an administratively feasible method by which class members can be identified. *Id.; see also Stalley v. ADS Alliance Data Syst., Inc.*, 296 F.R.D. 670, 679– 80(M.D.Fla.2013A plaintiff may demonstrate a proposed class is ascertainable by referring to a defendant's records. *See Carriuolo v. Gen. Motors LLC*, No. 14-61429-CIV, 2015 WL 12434325, at *3 (S.D. Fla. July 9, 2015); *see also Rikos v. Procter & Gamble Co.*, 799 F.3d 497, 525–26 (6th Cir. 2015) (finding class ascertainable where it "can be discerned with reasonable accuracy using Defendants' electronic records ..., though the process may require additional, even substantial,

review of files"), cert. denied, — U.S. —; 136 S.Ct. 1493, 194 L.Ed.2d 597 (2016).

### b. *Analysis*

As stated above, FRS has a searchable electronic database of every Deceptive Letter it sent. [FRS Depo. at Page 81; Line 25 – Page 84; Line 7]. FRS testified about its ability to prepare a comprehensive list, within a specific date range, which would include the names and addresses of all persons to whom FRS sent the Deceptive Letter, and identify the form sent, the version of the form, and the date each letter was sent. *Id.*

As such, identifying class members is more than feasible, and ascertainability is satisfied.

### D. RULE 23(b)(3) IS SATISFIED

An action may be maintained as a class action if the four (4) elements described above are satisfied, and in addition, certain other conditions under Rule 23(b)(3) are met:

> [T]he Court finds that the questions of law or fact common to the members of the Class predominate over any questions affecting only individual members, and that a Class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Fed. R. Civ. P. 23(b)(3).

#### 1. PREDOMINANCE: QUESTIONS OF LAW AND FACT COMMON TO THE CLASS PREDOMINATE

##### a. *Relevant Law*

At its core, the predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods. v. Windsor*, 521 U.S. 591, 623 (1997). The Supreme Court recently reiterated: "Rule 23(b)(3) ... does *not* require a plaintiff seeking class certification to prove that each 'elemen[t] of [her] claims [is] susceptible to classwide proof,'" but that "common questions '*predominate* over any questions affecting only individual [class] members.'" *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S.Ct. 1184, 1196 (2013) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2552 n.6 (2011)) (emphasis added). Accordingly, Plaintiff must make a "showing that *questions* common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Id.* at 1191.

Courts routinely find that cases dealing with the legality of standardized documents are generally appropriate for resolution by class action because the document is the focal point of the analysis. *Halverson v. Convenient Food Mart, Inc., supra; Brooks v. Midas-*

*International Corp.*, 47 Ill.App.3d 266, 361 N.E.2d 815 (1st Dist. 1977) (claim that advertising conveyed meaning that exhaust systems would be replaced free of charge); *Spirek v. State Farm Mut. Auto. Ins. Co.*, 65 Ill.App.3d 440, 382 N.E.2d 111 (1st Dist. 1978) (propriety of insurer's practice in requiring execution of subrogation agreements before paying medical benefits); *Haynes v. Logan Furniture Mart, Inc.*, 503 F.2d 1161 (7th Cir. 1974) (propriety of disclosure documents under Truth in Lending Act); *Haroco v. American Nat'l Bk. & Tr. Co.*, 121 F.R.D. 664, 669 (N.D.ILL.1988) (improper computation of interest on form document); *Kleiner v. First Nat'l Bank of Atlanta*, 97 F.R.D. 683 (N.D. Ga. 1983) (same); *Heastie v. Community Bank of Greater Peoria*, 125 F.R.D. 669 (N.D. Ill. 1989) (execution of home improvement financing documents in sequence that evaded consumers' rescission rights). This is true even though the nature and amount of damages may differ among the members of the class. *Id.; see also Allapattah Services, Inc. v. Exxon Corp.,* 333 F.3d 1248, 1251 (11th Cir. 2003), *aff'd sub nom. Exxon Mobil Corp. v. Allapattah Services, Inc.,* 545 U.S. 546 (2005*).*

### b. *Analysis*

Once again, here, it is undisputed that Plaintiff and all members of the Class were sent the same Deceptive Letter with the same Deceptive Sentence. The determination of whether, after applying the least sophisticated consumer standard, the collection activity violates the consumer protection laws is the central predominating issue before the Court. And, as the Court recognized in its Order On Motion to Dismiss [DE 20], the least sophisticated consumer standard is an objective one. *LeBlanc,* 601 F.3d at 1194; *In re Martinez,* 266 B.R. 523, 531 (Bankr. S.D. Fla. 2001), *judgment entered,* (Bankr. S.D. Fla. Aug. 22, 2001), aff'd, 271 B.R. 696 (S.D. Fla. 2001), *aff'd,* 311 F.3d 1272 (11th Cir. 2002) (The effectiveness of the notice is based on an **objective standard** of the manner in which a "least sophisticated consumer" would interpret the notice); *see also See Jeter,* 760 F.2d at 1175.

Because the letter at issue is a standard form, and because the standard for determining whether those communications violate the law is an objective one, the claims common to the Class will predominate over any individual issues.

Similarly, the defenses asserted present common issues of law and fact. For example, Defendant speciously argues that Plaintiff *and* members of the class lack standing and that any violations of law resulted from a "bona fide error." [DE 21 at page. 4]. Thus,

even the primary anticipated defense presents a common question which will be resolved for all class members. *See, e.g. Roundtree v. Bush Ross, P.A.*, 304 F.R.D. 644, 653 (M.D. Fla. 2015) (holding that while some affirmative defenses may create individual issues for some class members, "the common issues of whether [defendant] is subject to the FDCPA and whether its actions violated the FDCPA predominate."). Lastly, the Eleventh Circuit holds that, in the event there is individualized issues presented by affirmative defenses (there are not), those issues can and should be resolved in the claims administration process. *Allapattah Services, Inc.*, 333 F.3d at 1251.

Therefore, predominance is established.

**2.** SUPERIORITY: THE CLASS ACTION MECHANISM IS SUPERIOR TO OTHER AVAILABLE METHODS FOR THE FAIR AND EFFICIENT ADJUDICATION OF THIS CONTROVERSY

a. ***Relevant Law***

To determine if the superiority requirement of Rule 23(b)(3) is satisfied, the Court must consider the following:

(A)   the interest of members of the class in individually controlling the prosecution or defense of separate actions;

(B)   the extent and nature of any litigation concerning the controversy already commenced by or against members of the class;

(C)   the desirability or undesirability of concentrating the litigation of claims in the particular forum; and

(D)   the difficulties likely to be encountered in the management of a class action.

Fed.R.Civ.P. 23(b)(3); *see also, De Leon–Granados v. Eller & Sons Trees, Inc.*, 497 F.3d 1214, 1220 (11th Cir.2007). Class actions are particularly superior for cases where individual recovery would be small, because class actions "overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor." *Amchem Prods. v. Windsor*, 521 U.S. 591, 617, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997) (quoting *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir.1997)).

Efficiency is the primary focus in determining whether the class action is the superior method for resolving the controversy presented. *Eovaldi v. First Nat'l Bank*, 57 F.R.D. 545 (N.D.ILL.1972). The Court is required to determine the best available method for resolving

the controversy in keeping with judicial integrity, convenience, and economy. *Scholes, supra,* 143 F.R.D. at 189; *Hurwitz v. R.B. Jones Corp.,* 76 F.R.D. 149 (W.D. Mo. 1977). It is proper for a court, in deciding the "best" available method, to consider the " ... inability of the poor or uninformed to enforce their rights, and the improbability that large numbers of class members would possess the initiative to litigate individually." *Haynes v. Logan Furniture Mart, Inc., supra.*

### b. *Analysis*

The FDCPA limits statutory damages to one-thousand dollars ($1,000) per person plus any actual damages. In addition, FDCPA also limits statutory damages in class actions to the lesser of five hundred thousand dollars ($500,000) or one percent (1%) of the net worth of the debt collector. 15 U.S.C. §1692k(a)(2)(B). The amount of actual damages here could be relatively small as they are limited to the small amount of debts sought in the Deceptive Letters. The amount of statutory damages is large enough so as to call the statutory caps into play, which will render the recovery per class member slightly smaller, but not so small as to destroy the superiority element. *See Hicks v. Client Services, Inc.,* 257 F.R.D. 699, 700 (S.D.Fla. 2009) (De minimus recovery of $1.24 did not destroy superiority); *Hartley v. Suburban Radiologic Consultants, Ltd.,* 295 F.R.D. 357, 378–79 (D. Minn. 2013); Jancik, 2007 WL 1994026 at *11 (certifying a class where potential recovery for class members was only $6.94); Nichols v. Northland Grps., Inc., 2006 WL 897867, at *11 (N.D.Ill. Mar. 31, 2006) (certifying *379 a class with potential recovery of only $13.40 per class member).

The likelihood of a relatively modest monetary recovery for FRS's statutory violations becomes a disincentive to bringing individual actions—it makes them uneconomical and prohibitively expensive. Along those lines, courts have reasoned that a small recovery is not a bar, but rather is an incentive to certify a class because while individual plaintiffs could potentially obtain a greater damage award in an individual suit, all class plaintiffs are unlikely to bring their own FDCPA claims, and class actions are the best mechanism to enforce "the rights of groups of people who individually would be without effective strength to bring their opponents into court at all." *Hartley,* 295 F.R.D. at 379 citing *Amchem Prods.,* 521 U.S. at 617, 117 S.Ct. 2231; see also *Egge v. Healthspan Servs. Co.,* 208 F.R.D. 265, 272 (D.Minn.2002). Individuals desiring to pursue their own claims for statutory

damages are, of course, entitled to opt out of the class action. *See Egge*, 208 F.R.D. at 272; *Allapattah Services, Inc.,* 333 F.3d at 1251; F.R.C.P 23(b)(3).

Like in the Hartley case, here, "declining to certify a class, in this case, would only serve to benefit Defendants, rewarding them for sending large quantities of potentially illegal form letters by requiring them to pay statutory damages to only the single named plaintiff." *Hartley* 295 F.R.D. at 379. On the contrary granting certification, "even where individual recovery may be small, is consistent with the FDCPA scheme for awarding class action damages 'without regard to a minimum individual recovery.'" *Id.* citing 15 U.S.C. § 1692k(2)(B).

In sum, modest recovery does not, diminish the importance of enforcing consumers' rights under the FDCPA. It simply makes the class action mechanism the best avenue for recovery.

With regard to efficiency, in this case, there is no more efficient method available for the adjudication of the claims which might be brought by each individual debtor subjected to Defendant's practice. *Zinberg v. Washington Bancorp, Inc.,* 138 F.R.D. 397 (D.N.J. 1990). Indeed courts across the country recognize that class actions are a more efficient and consistent means of determining the legality of a form letter. *Labbate-D'Alauro v. GC Services FRS. Partnership,* 1996 WL 563376 (E.D.N.Y. 1996); *Villareal v. Snow,* 1996 WL 28254 (N.D.Ill.1996); *Gammon v. GC Services FRS. Partnership,* 162 F.R.D. 313 (N.D.ILL. 1995). As some Courts have explained, FDCPA class actions are not only certifiable, but are needed:

> We do not assume that class members understand the provisions [of the FDCPA] well enough to know that it may be financially worthwhile to spend the time and effort to litigate these matters. Also, the number of potential class members makes concentration of these claims desirable. We also note that decertifying this class would (theoretically) create a perverse incentive for debt collectors using unfair practices to use them as widely as possible, in order to prevent a class action from being certified.

*Hicks v. Client Services, Inc.,* 257 F.R.D. 699, 700 (S.D.Fla. 2009). Another court has also noted:

> Given the relatively small amount recoverable by each potential litigant, it is unlikely that, absent the class action mechanism, any one individual would pursue his claim, or even be able to retain an attorney willing to bring the action. As Professors Wright, Miller, and Kane have discussed

in analyzing consumer protection class actions such as the instant one, "typically the individual claims are for small amounts, which means that the injured parties would not be able to bear the significant litigation expenses involved in suing a large corporation on an individual basis. These financial barriers may be overcome by permitting the suit to be brought by one or more consumers on behalf of others who are similarly situated." 7B Wright et al., § 1778, at 59; see, e.g., *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985) ("Class actions ... may permit the plaintiffs to pool claims which would be uneconomical to litigate individually"). The public interest in seeing that the rights of consumers are vindicated favors the disposition of the instant claims in class action form.

*Lake v. First Nationwide Bank*, 156 F.R.D. 615 at 628, 629 (E.D.Pa. 1994).

In sum, this case, brought by a consumer debtor involves relatively modest damage amounts, but is of enormous consequence and importance. This case is needed enforce the protections afforded by the FDCPA and prevent FRS from continuing its unlawful dent collection tactics. Doing so requires substantial time and financial means to pursue, making the case uneconomical, unless class certification is granted. In addition, certification permits individual claimants to opt-out and pursue their own actions separately if they believe they can recover more in an individual suit.

The class action mechanism provides is the most economical method for adjudicating the claims of Plaintiff and the Class, therefore, superiority is established.

## III.   CONCLUSION

Therefore, Plaintiff, Maryann Fiorentino, respectfully prays that the Court certify the Class set forth above, appoint Plaintiff, Maryann Fiorentino as class representative and the undersigned attorneys as class counsel.

**[THIS SPACE INTENTIONALLY LEFT BLANK]**

Respectfully submitted this 30th day of November 20, 2017, by:

ZEBERSKY PAYNE, LLP
*Counsel for Plaintiff*
110 S.E. 6th Street, Suite 2150
Ft. Lauderdale, Florida 33301
Telephone: (954) 989-6333
Facsimile: (954) 989-7781
Primary Email: jshaw@zpllp.com
Secondary Emails: mperez@zpllp.com;

By: _____
          JORDAN A. SHAW, ESQ.
          Florida Bar No. 111771
          EDWARD H. ZEBERSKY, ESQ.
          Florida Bar No. 908370

*and*

DARREN R. NEWHART, ESQ.
*Co-Counsel for Plaintiff*
Florida Bar No.:115546
E-mail: Darren@cloorg.com
721 US Highway 1, Suite 201
North Palm Beach, Florida 33408
Telephone: (561) 692-6013
Facsimile: (305) 574-0132

## CERTIFICATE OF SERVICE

We hereby certify that a true and correct copy of the foregoing was served upon all counsel of record by Electronic Service through the CM/ECF portal, this 30th day of November 2017.

By: _____
          JORDAN A. SHAW, ESQ.